**F I L E D**
CLERK, U.S. DISTRICT COURT

01/29/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PUNEET V. KAKKAR (Cal. Bar No. 259816)
Assistant United States Attorney
Deputy Chief, International Narcotics,
  Money Laundering, and Racketeering Section
BRITTNEY M. HARRIS (Cal. Bar No. 294650)
Assistant United States Attorney
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5728/0488
     Facsimile: (213) 894-0142
     E-mail:    puneet.kakkar@usdoj.gov / brittney.harris@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:21-cr-00008-CJC |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT FOR DEFENDANT HUGO SERGIO MEJIA |
| HUGO SERGIO MEJIA, | |
| Defendant. | |

1.   This constitutes the plea agreement between HUGO SERGIO MEJIA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count Information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with operating an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a), (b)(1)(B) and money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B).

b.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by General Order 20-097 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal

Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

   iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

   iv.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

   v.   Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

   vi.  Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  c.   Not contest facts agreed to in this agreement.

  d.   Abide by all agreements regarding sentencing contained in this agreement.

  e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.   Agree to and not oppose the imposition of the following conditions of probation or supervised release:

i.   The defendant shall maintain, at most, one virtual currency wallet, and that one wallet shall be used for all personal transactions. The defendant shall not obtain or open any virtual currency wallets/accounts without prior approval of the Probation Officer. All virtual currency transactions, along with any virtual currency wallet Extended Public Keys (XPUB), shall be disclosed to the Probation Officer upon request. The defendant shall be limited to only using and possessing open public blockchain virtual currencies and restricted from using privacy-based blockchain virtual currencies, unless prior approval is obtained from the Probation Officer.

ii.   The defendant shall comply with the Internal Revenue Service's reporting requirements as they pertain to virtual currencies and shall provide proof of having done so to the Probation Officer.

<u>PAYMENT OF TAXES OWED</u>

3.   Defendant agrees to cooperate with the Internal Revenue Service in the determination of defendant's tax liability for 2019. Defendant agrees that:

a.   Defendant will file, prior to the time of sentencing, initial returns for the year, correctly reporting unreported income;

4

will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Fiscal Clerk of the Court at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay to the Fiscal Clerk of the Court all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s).  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b.    Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.    Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.    Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6651(f), on the understatement of tax liability for 2019.

e.    Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

<u>FORFEITURE AND FINANCIAL ACCOUNTABILITY</u>

4.    Defendant further agrees:

5

a.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

i.    $9,820 in U.S. Currency seized from a Santa Ana, California, residence;

ii.    $224,167 in U.S. Currency ($189,187 and $34,980) seized from an Ontario, California residence;

iii.    Four 100 ounce Silver Bars seized from defendant's residence in Ontario, California;

iv.    Ten 10 ounce Silver Bars seized from defendant's residence in Ontario, California;

v.    Ten 1 ounce Silver Coins seized from defendant's residence in Ontario, California;

vi.    Various cryptocurrency approximately valued at $30,558.27 seized from defendant; and,

vii.    Various cryptocurrency approximately valued at $65,028.77 seized from defendant's account with Binance (collectively, the "Forfeitable Property").

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the assets.

c.    That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including,

without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

j.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

7

notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Should the Court sentence defendant to a term of imprisonment, recommend that defendant not be required to self-surrender to serve his sentence until on or after April 1, 2021, unless defendant violates the conditions of his bond.

6.    Because the justice system is facing an unprecedented crisis through the backlog of cases, the parties agree that the defendant is entitled to a two-level variance as recognition of defendant's early acceptance of responsibility, which will lessen the burden on the court system by: (1) waiving any right to presence and pleading guilty at the earliest opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's General Order allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) waiving all appellate rights.

<u>NATURE OF THE OFFENSES</u>

7.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, operating an unlicensed money transmitting business in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(B), the following must be true: (1) defendant knowingly conducted, controlled, managed, supervised, directed, or owned a business; (2) the business was a money transmitting business; and (3) that business was unlicensed, that is, a business which affects interstate or foreign commerce and fails to comply with the registration requirements of 31 U.S.C. § 5330 and the regulations prescribed thereunder.

8.    Defendant also understands that for defendant to be guilty of the crime charged in count two, that is, money laundering, in violation of Title 18, United States Code, Section 1956(a)(3)(B), the following must be true: (1) defendant conducted a financial transaction that affected interstate or foreign commerce in any way or degree; (2) the transaction involved property represented by a law

enforcement officer, and believed by the defendant, to be the proceeds of some form of unlawful activity; and (3) defendant acted with the intent to conceal or disguise the nature, location, source, ownership, or control of the property.

PENALTIES

9.   Defendant also understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(B), is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(3)(B), is: 20 years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 25 years imprisonment; a three-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

From an unknown date, but no later than in or around May 2018, to on or about September 3, 2020, defendant HUGO SERGIO MEJIA ("defendant") knowingly operated, owned, and conducted a virtual currency exchange business, for which he exchanged fiat currency, such as United States dollars, for Bitcoin, and vice versa. Defendant charged commissions for these transactions, which constituted his profit for serving as an exchanger.  Defendant also paid other individuals to assist him with transporting cash and/or other funds.  Defendant also established companies to mask his true activity, including Worldwide Secure Communications, LLC, World Secure Data, The HODL Group LLC, and HODL Group, LLC.  Defendant never registered his exchange business with the Financial Crimes

Enforcement Network, as he knew was required, and knew that he was not registered.  Defendant advertised his business on localbitcoins.com for a period of time and/or was referred to others by word of mouth.  Defendant communicated with his clients by encrypted messaging services such as Wickr, and would meet with clients at locations such as coffee shops, to exchange cash for virtual currency.  During this time frame, defendant exchanged over $13 million, and no more than $25 million.

In the course of his business, defendant also engaged in financial transactions, affecting interstate commerce, with the intent to conceal or disguise the nature, location, source, ownership, or control of the property, and these transactions involved funds that were represented, and believed by the defendant, to be the proceeds of some form of unlawful activity, namely, drug trafficking.  For example, defendant engaged in the following transactions:

- On May 9, 2019, a confidential informant ("CI"), who was directed by agents of the Internal Revenue Service and Homeland Security Investigations, met with defendant to exchange approximately $10,000 worth of Bitcoin for cash. The two met at a coffee shop in Irvine, California.  During the exchange, the CI discussed his activity on the darknet. Defendant also discussed other clients of his, including those who operated a smoke shop.

- On August 22, 2019, the CI and defendant met again to exchange approximately $50,000 worth of Bitcoin for cash. The two met at a coffee shop in Irvine, California.  During the exchange, defendant discussed that he met with clients in

Riverside, Pomona, and Riverside.  Defendant further stated that he had lost half of his customer base and was attempting to re-grow it, but that it was tough with the growth of Bitcoin ATM kiosks. Defendant also mentioned that there were more regulations placed on exchangers, and contrasted his business with other exchange service that require customers to provide full information about themselves, such as their place of residence and social security number.  Further, during this meeting, the CI discussed his drug trafficking business and the sale of methamphetamine.  Defendant mentioned that he also had another client who sold drugs on the darknet.

- On March 12, 2020, the CI and defendant met again to exchange approximately $100,000 worth of Bitcoin for cash.  The two met at a coffee shop in Irvine, California.  During the exchange, the CI provided approximately 14.273 Bitcoin and received approximately $82,150 in U.S. currency from defendant (which was the value of that amount of Bitcoin at the time, less defendant's commission).  The ID for this transaction on the Blockchain is 5a8bab53056c72bc48bef6d80e58a673386472a683328b9d93104bd697533 86b.  During this meeting, the CI informed defendant that his primary customer was a methamphetamine customer in Australia who purchased methamphetamine every four to six weeks and sold it in Australia for five times more than the average price in the United States.  The CI and defendant discussed conducting monthly exchanges of $100,000 going forward.

In total, the CI and defendant conducted five Bitcoin-cash transactions that exceeded $250,000.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**COUNT ONE**

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2S1.3(a)(2) |
| Value of the Funds | | U.S.S.G. §§ 2S1.3(a)(2), |
| | +20 | 2B1.1(b)(1)(K) |
| Source of Funds | +2 | U.S.S.G. § 2S1.3(b)(1) |
| **Total** | 28 | |

**COUNT TWO**

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. § 2S1.1(a)(2) |
| Value of Laundered Funds | | U.S.S.G. §§ 2S1.1(a)(2), |
| | +12 | 2B1.1(b)(1)(E) |
| 1956 Conviction | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |
| Business of Laundering Funds | +4 | U.S.S.G. § 2S1.1(b)(2)(C) |
| **Total** | 26 | |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.     The right to confront and cross-examine witnesses against defendant.

f.     The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.     The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.     Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

22.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, provided it is no more than the high-end of the Sentencing Guidelines range calculated by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum;

17

(d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 1 above.

23.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

24.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

25.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a

18

claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have

cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

///

///

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4      33.   The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 TRACY L. WILKISON
   Acting United States Attorney

11

12 _____        January 27, 2021
                                          _____
13 PUNEET V. KAKKAR                        Date
   BRITTNEY M. HARRIS
14 Assistant United States Attorneys       pvk on behalf of M.Crain

   _____        1/21/2021
15 HUGO SERGIO MEJIA                       _____
   Defendant                              Date
16
   _____        January 21, 2021
17 MICHAEL CRAIN                           _____
   Attorney for Defendant HUGO SERGIO      Date
18 MEJIA

19

20                     <u>CERTIFICATION OF DEFENDANT</u>

21     I have read this agreement in its entirety.  I have had enough

22 time to review and consider this agreement, and I have carefully and

23 thoroughly discussed every part of it with my attorney.  I understand

24 the terms of this agreement, and I voluntarily agree to those terms.

25 I have discussed the evidence with my attorney, and my attorney has

26 advised me of my rights, of possible pretrial motions that might be

27 filed, of possible defenses that might be asserted either prior to or

28 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

1   of relevant Sentencing Guidelines provisions, and of the consequences
2   of entering into this agreement.  No promises, inducements, or
3   representations of any kind have been made to me other than those
4   contained in this agreement.  No one has threatened or forced me in
5   any way to enter into this agreement.  I am satisfied with the
6   representation of my attorney in this matter, and I am pleading
7   guilty because I am guilty of the charges and wish to take advantage
8   of the promises set forth in this agreement, and not for any other
9   reason.

10  *Hugo S Mejia*
11  _____        1/21/2021
    HUGO SERGIO MEJIA                        _____
    Defendant                                Date
12
13
14              CERTIFICATION OF DEFENDANT'S ATTORNEY
15       I am HUGO SERGIO MEJIA's attorney.  I have carefully and
16  thoroughly discussed every part of this agreement with my client.
17  Further, I have fully advised my client of his rights, of possible
18  pretrial motions that might be filed, of possible defenses that might
19  be asserted either prior to or at trial, of the sentencing factors
20  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
21  provisions, and of the consequences of entering into this agreement.
22  To my knowledge: no promises, inducements, or representations of any
23  kind have been made to my client other than those contained in this
24  agreement; no one has threatened or forced my client in any way to
25  enter into this agreement; my client's decision to enter into this
26  ///
27  ///
28

                                   23

1   agreement is informed and voluntary; and the factual basis set forth

2   in this agreement is sufficient to support my client's entry of

3   guilty pleas pursuant to this agreement.

4

5   _____          January 21, 2021
    MICHAEL CRAIN                              Date
6   Attorney for Defendant HUGO SERGIO
    MEJIA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,          CR No. 20-

12           Plaintiff,                 I N F O R M A T I O N

13           v.                         [18 U.S.C. §§ 1960(a), (b)(1)(B):
                                        Operating an Unlicensed Money
14   HUGO SERGIO MEJIA,                 Transmitting Business; 18 U.S.C.
                                        § 1956(a)(3)(B): Laundering of
15           Defendant.                 Monetary Instruments; 18 U.S.C.
                                        § 982 and 28 U.S.C. § 2461(c):
16                                      Criminal Forfeiture]

17

18       The Acting United States Attorney charges:

19                               COUNT ONE

20               [18 U.S.C. §§ 1960(a), (b)(1)(B)]

21       Beginning in or around May 2018, and continuing until on or

22   about September 3, 2020, in Los Angeles, Orange, and Riverside

23   Counties, within the Central District of California, and elsewhere,

24   defendant HUGO SERGIO MEJIA, knowingly conducted, controlled,

25   managed, supervised, directed, and owned an unlicensed money

26   transmitting business affecting interstate and foreign commerce,

27   ///

28   ///

namely, a virtual currency exchange business, that failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and the regulations thereunder.

COUNT TWO

[18 U.S.C. § 1956(a)(3)(B)]

On or about March 12, 2020, in Orange County, within the Central District of California, defendant HUGO SERGIO MEJIA, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, that is, the felonious importation, receiving, buying, selling, and otherwise dealing in controlled substances punishable under a law of the United States ("drug trafficking"), knowingly conducted a financial transaction, affecting interstate commerce, involving property represented by a person at the direction of an Federal official to be proceeds of specified unlawful activity, that is, drug trafficking, namely, the exchange of 14.273 Bitcoin for $82,150 in United States dollars, plus fees (Blockchain transaction ID 5a8bab53056c72bc48bef6d80e58a673386472a683328b9d93104bd69753386b).

FORFEITURE ALLEGATION

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One or Two of this Information.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to:

i.   $9,820 in U.S. Currency seized from a Santa Ana, California, residence;

ii.   $224,167 in U.S. Currency ($189,187 and $34,980) seized from an Ontario, California residence;

iii. Four 100 ounce Silver Bars seized from defendant's residence in Ontario, California;

iv.   Ten 10 ounce Silver Bars seized from defendant's residence in Ontario, California;

v.   Ten 1 ounce Silver Coins seized from defendant's residence in Ontario, California;

vi.   Various cryptocurrency approximately valued at $30,558.27 seized from defendant; and,

vii. Various cryptocurrency approximately valued at $65,028.77 seized from defendant's account with Binance.

(b)   To the extent such property is not available for

4

forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

///

///

1    committing the offense or offenses giving rise to the forfeiture,

2    conducted three or more separate transactions involving a total of

3    $100,000.00 or more in any twelve-month period.

4

5                             TRACY L. WILKISON
                              Acting United States Attorney

6

7

8                             BRANDON D. FOX
                              Assistant United States Attorney
                              Chief, Criminal Division

9

10                            CAROL A. CHEN
                              Assistant United States Attorney
                              Chief, International Narcotics, Money
11                              Laundering, and Racketeering Section

12                            PUNEET V. KAKKAR
                              Assistant United States Attorney
13                            Deputy Chief, International Narcotics, Money
                                Laundering, and Racketeering Section

14

15                            BRITTNEY M. HARRIS
                              Assistant United States Attorney
                              International Narcotics, Money Laundering,
16                              and Racketeering Section

17

18

19

20

21

22

23

24

25

26

27

28