MICHAEL M. CRAIN
California State Bar No. 045083
P.O. BOX 3730
Santa Monica, California 90408
Tel:    (310) 571-3324
Fax:    (310) 494-0750
Email: Michaelmcrain@aol.com

Attorney for Defendant Hugo Sergio Mejia

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>HUGO SERGIO MEJIA,<br><br>       Defendant<br>_____ | Case No. CR 21-008-CJC-1<br><br>**DEFENDANT HUGO SERGIO MEJIA'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE REPORT**<br><br>Date: November 18, 2021<br>Time: 11:00 a.m.<br>Courtroom: 9B |

# TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Defendant Hugo Sergio Mejia's Sentencing Position and Objections to the
Presentence Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    The Plea Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   The Presentence Report and the Probation Recommendation Letter.. . . . . . . . 3

IV.    The Government's Sentencing Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.    Hugo Mejia's Personal History.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.    The Fair, Just and Appropriate Sentence for Mr. Mejia.. . . . . . . . . . . . . . . . . 11
      A.    Mr. Mejia is Eligible for a Sentence of Probation. . . . . . . . . . . . . . . . 11
      B.    A Sentence of Probation Would be Fair, Just and Sufficient, But Not
            Greater than Necessary, to Comply with the Purposes of Federal
            Sentencing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.   Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

Federal Codes and Statutes:

U.S.S.G. § 5B1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S.S.G. § 5B1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17

U.S.S.G. § 5B1.1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

U.S.S.G § 5B1.1, comment (n.2) (i.e., Commentary, Application Note 2)12, 13, 16, 17

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 11, 13, 15, 16, 17, 21

18 U.S.C. 3553(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 3553(a)(1-4, 6-7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 3553(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 3559(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3561(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

18 U.S.C § 3561(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

18 U.S.C. § 3562(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 17

18 U.S.C. § 3565(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. §§ 3581. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 3582(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 3621(b)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. § 3621(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cases:

*Gall v. United States,* 552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . 6, 14, 15, 21

*Kimbrough v. United States,* 552 U.S. 85 (2007). . . . . . . . . . . . . . . . . . . . . 17

*Rita v. United States*, 551 U.S. 338 (2007). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stinson v. United States*, 508 U.S. 36 (1993). . . . . . . . . . . . . . . . . . . . . 13, 17

*United States v. Barker,* 771 F.2d 1362 (9th Cir. 1985). . . . . . . . . . . . . . . . 6

*United States v. Belgard,* 894 F.2d 1092 (9th Cir. 1990). . . . . . . . . . . . . . . 17

*United States v. Booker,* 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . 11, 13, 17

*United States v. Brewer,* 978 F.Supp.2d 710 (W.D.Tex. 2013). . . . . . . . . . . . . . . . 16

*United States v. Crotteau,* CR 19-456 (D. Or.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008).. . . . . . . . . . . . . . . . . . 15, 16

*United States v. Edwards,* 585 F.3d 1004 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . 6

*United States v. Farkas,* CR 18-340-LGS (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Fuentes-Barahona*, 111 F.3d 651 (9th Cir. 1997). . . . . . . . . . . . 13

*United States v. Godsey,* 690 F.3d 906 (8th Cir. 2012). . . . . . . . . . . . . . . . . . . . 13

*United States v. Kalra,* CR 19-484-PSG. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Kalra,* CR 19-508-PSG. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Kippers,* 685 F.3d 491 (5th Cir. 2012).. . . . . . . . . . . . . . . . . . . . 15

*United States v. Mohammad,* CR 20-088-JLS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Neman,* CR 14-521-JAK,. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Ong,* CR 17-191-RSL (W.D. Wash.). . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Pyles*, 272 Fed.Appx. 258 (4th Cir. 2008). . . . . . . . . . . . . . . . . . 16

*United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 15

*United States v. Sanchez,* 907 F.2d 127 (10th Cir. 1990). . . . . . . . . . . . . . . . . . . . 15

*United States v. Testa,* CR 19-199-RM (D. Colo.) . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Tetley,* CR 17-738-R. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Walker,* 918 F.3d 1134 (10th Cir. 2019). . . . . . . . . . . . . . . . . . . 15

Other Sources:

www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases
/diabetic-retinopathy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

https.//www.diabetes.org, "How Covid-19 Impacts People with Diabetes." . . . . . . . . . . . 18

Bop.gov/coronavirus [10/20/21]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

https://www.federalregister.gov/documents/2018/04/30/2018-09062/annual-determination-of-average-cost-of-incarceration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

LIST OF EXHIBITS

Exhibit A:   Mr. Mejia's medical record

Exhibit B:   Letter from Carlos Morales, LCSW, dated October 18, 2021

Exhibit C:   Letter from  Mr. Mejia

Exhibit D:   Letter from Tony Sevilla, cousin of Mr. Mejia

Exhibit E:   Letter from Stevie Concha, Mr. Mejia's fiancé

Exhibit F:   Letter from Karen Concha, mother of  Mr. Mejia's fiancé

Exhibit G:   Letter from Lt. Col. Jerry Simon, friend of Mr. Mejia

Exhibit H:   Letter from Mayra Triana, friend of Mr. Mejia

Exhibit I:   Letter from Harmony Chaney, friend of Mr. Mejia

Exhibit J:   Letter from Omar Abuelkhair, colleague of Mr. Mejia

Exhibit K:   Letter from Carlos Morales, LCSW, dated September 22, 2021

Exhibit L:   Letter from Marlene Santellanes,  younger sister of Mr. Mejia

MICHAEL M. CRAIN
California State Bar No. 045083
 P.O. BOX 3730
Santa Monica, California 90408
Tel:   (310) 571-3324
Fax:   (310) 494-0750
Email: Michaelmcrain@aol.com

Attorney for Defendant Hugo Sergio Mejia

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　v.<br><br>HUGO SERGIO MEJIA,<br><br>　　Defendant<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CR 21-008-CJC-1

**DEFENDANT HUGO SERGIO MEJIA'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE REPORT**

Date: November 18, 2021
Time: 11:00 a.m.
Courtroom: 9B

　　　Defendant Hugo Sergio Mejia, through his counsel Michael M. Crain, hereby submits his Sentencing Position and Objections to the Presentence Report.

Dated: November 1, 2021

Respectfully submitted,

/s/ Michael M. Crain
MICHAEL M. CRAIN, Attorney
for Defendant Hugo Sergio Mejia

1

# I.

## Introduction

On January 29, 2021, a two-count Information was filed charging Mr. Mejia with violations of 18 U.S.C. § 1960(a) and (b)(1)(B) (operating an unlicensed money transmitting business) and 18 U.S.C. 1956(a)(3)(B) (money laundering).

Pursuant to agreement of the parties, a summons was returned directing Mr. Mejia to appear in court on May 20, 2021. (Doc. 12). On that date, Mr. Mejia waived Indictment, pleaded not guilty, and the case was assigned to this Court for a change of plea. (Docs. 13, 14, 15, 19). On July 1, 2021, Mr. Mejia pleaded guilty to both counts of the Information. (Doc. 22).

For the reasons which follow, it is respectfully submitted that Mr. Mejia be sentenced to a term of probation. If the Court is not inclined to impose that sentence, it is requested that he be sentenced to a short term of imprisonment followed by a period of supervised release during which, for a reasonable time, Mr. Mejia would be on house arrest. Should he receive a term of imprisonment, it is respectfully submitted that it be not greater than 12 months and a day.

# II.

## The Plea Agreement

On January 29, 2021, the government filed a signed Plea Agreement. (Doc. 3). In it, Mr. Mejia agreed to plead guilty to each count in the Information. In the Factual Basis, Mr. Mejia admitted that he had operated a Bitcoin exchange business which he knew was not registered with the Financial Crimes Enforcement Network and that, between May 2018 and September 2020, he had exchanged between $13 million and $25 million. (Doc. 5, ¶ 15). He also admitted that he engaged in financial transactions intended to conceal a form of unlawful activity, namely, drug

trafficking. He admitted that on three occasions he met with a confidential informant (CI) who discussed his own purported drug trafficking business. In all, the CI and Mr. Mejia conducted five Bitcoin-cash transactions that exceeded $250,000. (Doc. 5, ¶ 15). The parties have agreed to various advisory Sentencing Guidelines factors, which are identified in the plea agreement. The highest total offense level is 28. (Doc. 5, ¶ 17). The government agrees to a 3 level reduction for acceptance of responsibility and to a further 2 level reduction as recognition for Mr. Mejia's early acceptance of responsibility. (Doc. 5, ¶¶ 5, 6). In addition, the parties reserve the right to argue that additional offense characteristics, adjustments and departures are appropriate, and reserve the right to argue for a sentence outside the sentencing range based on factors set forth in 18 U.S.C. § 3553(a). (Doc. 5, ¶¶ 17, 19). Also, Mr. Mejia has agreed to forfeit a substantial number of assets which were connected to his activities. (Doc. 5, ¶4, a-k).

## III.

### The Presentence Report and the Probation Recommendation Letter

The Presentence Report (PSR) describes Mr. Mejia's personal history, which will be discussed in more detail below.

The PSR confirms that Mr. Mejia in essence has no criminal history. His only other law enforcement contact was over twenty years ago, when he was convicted of driving with a suspended license, a misdemeanor.[1] His criminal history score is zero and he is in criminal history category I. ( PSR, ¶¶ 40-46.)

---

[1] The PSR notes a matter in May, 2020 in which there is no record of court action. The PSR concludes that this arrest "may be related to the instant offense." (PSR, ¶47.) In fact, it was part of the investigation which led to the present charges. At that time, Mr. Mejia was arrested and then released without charges being filed.

The PSR agrees with the Plea Agreement's advisory Sentencing Guidelines factors. It concludes that Counts 1 and 2 are required to be grouped together and that Count 1 produces the higher offense level, which is level 28. After a reduction for acceptance of responsibility, the total offense level is 25. (PSR, ¶¶ 24-38).

The PSR states that the advisory Guidelines range is 57-71 months. (PSR, p.4.) The PSR notes that, in the Plea Agreement, the parties agree that there should be a further 2 level reduction because Mr. Mejia entered an early plea of guilty during a time when there was a large backlog of cases in the courts in this District. (PSR, ¶ 98). Although the PSR does not factor this into its calculation, once the agreed upon 2 level reduction is added to the equation, the total offense level becomes 23, not 25, and the advisory Guidelines range becomes 46-57 months.

In the Probation Recommendation Letter, the Probation Officer observes that Mr. Mejia "has a minimal criminal history, has a record of gainful employment, prior military service and has strong family ties." (Recommendation Letter, p. 5.) The Probation Officer recommends two sentences, which are in conflict with one another. At one point, the Probation Officer recommends a sentence of 50 months imprisonment, but at another recommends a sentence of 46 months. (Recommendation Letter, pp. 1, 5.) As will be seen, each of these inconsistent recommendations is far in excess of a fair and just sentence which comports with the sentencing mandates of 18 U.S.C. § 3553(a).[2]

## IV.

## The Government's Sentencing Position

In its Government's Sentencing Position, the government recommends a sentence of 46 months imprisonment. (Doc. 33). It is respectfully submitted that this

---

[2] The PSR, ¶ 91, incorrectly notes that Mr. Mejia is represented by retained counsel. In fact, Mr. Mejia is represented by appointed CJA counsel.

4

recommendation calls for a sentence which would not comport with the mandate of 18 U.S.C. § 3553(a), that a sentence be "sufficient, but not greater than necessary," to comply with the purposes of federal sentencing as set forth in § 3553(a)(2).[3]   The government's recommended sentence is far "greater than necessary" to achieve the goal of imposing a fair and just sentence on Hugo Mejia. That is so will now be discussed.

Although the government, in passing, mentions 18 U.S.C. § 3553(a) (Government's Sentencing Position, pp. 1, 7-8), for the most part, in disregard of the mandate of § 3553(a), it focuses on the nature of money exchange businesses, cryptocurrency, and the "dark web" and recites the factual basis contained in the plea agreement. (Sentencing Position, pp. 1-7). Other than mentioning that Mr. Mejia received an honorable discharge from the United States Army and that he has medical issues, the government's entire focus appears to be on general deterrence. The government overemphasizes the crimes to which Mr. Mejia has pleaded guilty. It characterizes them as such that the Court would be required to impose a heavy sentence to "send a message" that will "hopefully" deter others from engaging in unlicensed money exchanges and from using them to commit underlying offenses. (Sentencing Position, pp. 3-5, 8-9). The government admits that it is lawful to trade in cryptocurrency. (Sentencing Position pp. 3-4). But it insinuates, without proof or citation of authority, that such activity in itself is sinister, is generally connected to criminal activity, is widespread and dangerous, and that it must be stamped out by warehousing Mr. Mejia for almost four years in prison.

This proposal is the equivalent of "sending a message" by sentencing to a harsh punishment a defendant who sold drugs because there is a nationwide drug

---

[3] The Court "shall consider" the nature and circumstances of the offense, the history and characteristics of the defendant and the need for the sentence imposed to promote the seriousness of the offense, to promote respect for the law, to provide just punishment, to "afford adequate deterrence to criminal conduct," to protect the public from further crimes of the defendant, to provide training and care. The Court "shall" also consider the need to avoid unwarranted sentencing disparities. 18 U.S.C. 3553(a)(2).

5

problem, or sentencing to a harsh punishment a defendant who possessed an illegal firearm because there is a gun problem in the United States. This approach would allow a sentencing court to ""make an example" out of any defendant appearing for sentencing. Not only is this most unfair, it is contrary to law by essentially giving short shrift to all but one of the § 3553(a) sentencing considerations - general deterrence.

While a sentencing court can consider general deterrence, it must follow the Supreme Court's mandate in *Gall v. United States,* 552 U.S. 38, 49-50 (2007) that after considering the advisory Guidelines, the sentencing court must consider "all of the § 3553(a) factors" and must make an "individualized assessment based on the facts presented." It cannot,  as the government urges, impose a sentence essentially based on only one § 3553(a) factor, general deterrence.[4]

In *United States v. Edwards,* 585 F.3d 1004 (9th Cir. 2010), the Ninth Circuit affirmed a sentence of probation which the District Court had imposed. The defendant had been convicted of bankruptcy fraud and making a false statement to a bank. The District judge conceded that general deterrence was "important in white collar cases," but correctly concluded that § 3553(a) and the Sentencing Reform Act "do not require the goal of general deterrence be met through a period of incarceration." *Id.* at 1011, 1016-1017. In addition, the District Court had properly considered all of the § 3553(a) factors in determining that probation was the appropriate sentence, *Id.* at 1011-1018, as *Gall v. United States* requires.

At this point this sentencing position will discuss Mr. Mejia's personal history and discuss what the defense respectfully submits is the appropriate sentence in this case.

---

[4] "General deterrence is a legitimate aim, but it has never been the *sole* aim in imposing sentence. Central to our system of values and implicit in the requirement of individualized sentencing is the categorical imperative that no person may be used merely as an instrument of social policy, that human beings are to be treated not simply as means to a social end like deterrence, but also - and always - as ends in themselves." *United States v. Barker,* 771 F.2d. 1362, 1368-1369 (9th Cir. 1985).

# V.

## Hugo Mejia's Personal History

Mr. Mejia's personal history is described in the Presentence Report, ¶¶ 49-86.

Mr. Mejia is now 50 years of age. His father died 12 years ago of a heart attack and complications of diabetes.[5] Mr. Mejia is the caretaker for his 75 year old mother. He resides with her, his aunt and a cousin in a modestly furnished  home in Ontario which is owned by Mr. Mejia's brother. His mother suffers from Type 2 diabetes and hypertension. He has a close and supportive relationship with his two siblings, who live locally, and his mother.

Mr. Mejia grew up in a poor family. Until he was 11 they lived in West Los Angeles but then moved to housing projects in East Los Angeles. Mr. Mejia was surrounded by gang activity and was often bullied.  He witnessed gang fights and drive by shootings.

As a toddler, Mr. Mejia was sexually abused by a neighbor.

Mr. Mejia is in poor health. In the early 2000's, he was diagnosed with Type 2 diabetes, for which he takes daily medication. In the summer of 2020, he was diagnosed with high cholesterol, for which he also takes medication. In December 2020, he  had two surgeries to remove gallstones.

In January 2021 Mr. Mejia was diagnosed with retinopathy, for which he receives monthly injections in both eyes to preserve his vision. (See Exhibit A, Mr. Mejia's medical record.)  Retinopathy can cause blindness in those who suffer from diabetes.[6]

---

[5] Mr. Mejia has related that his father was hardworking but was also an alcoholic. Growing up, Hugo sometimes had to fetch his father from bars and recalls occasions on which his father passed out in the family home.

[6]
www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/diabetic-retinopathy

In addition to these physical ailments, Mr. Mejia has had a gambling addiction. He suffers from depression, anxiety and stress. He attends weekly counseling sessions with a therapist to help him deal with these problems. During 2020, Mr. Mejia used unprescribed Xanax almost daily to help him deal with his anxiety and stress and, after he stopped using Xanax, he used marijuana edibles to help him cope. His anxiety had increased to the point where he required prescription medication to manage his symptoms effectively. However, he chose therapy to help him deal with his anxiety and cravings for Xanax.[7]

Mr. Mejia is a United States Army veteran who was honorably discharged in 1991. While in the military he served as a flight operations coordinator.

In 1992, Mr. Mejia obtained a BA degree in business operations. In 1999, he received a Master's degree in business administration. He has specialized training in various computer related operations. From 1998 to 2003, he worked at various schools teaching computer networking courses.

In 2003, his life took a turn for the worse. In that year, he ended a long-term relationship with his fiancé. This caused him to be depressed. For the next two years he was unemployed. He then worked at various jobs, selling mobile homes, working odd jobs, being a security guard, helping his cousin manage a store, and as an Uber driver. In November 2020, he was able to form an online jewelry wholesale business in Redlands, California, which he operates, albeit currently at a financial loss.

Between May 2018 and September 2020, Mr. Mejia operated a virtual currency exchange business, in which he exchanged virtual currency such as Bitcoin for U.S. dollars and vice versa. He did not register his business with the Department of the Treasury's Financial Crimes Enforcement Network. On five occasions he met

_____

[7] Letter from Carlos Morales, LCSW, dated October 18, 2021. (Exhibit B). Mr. Morales states that his sessions with Mr. Mejia focus on mental health issues, including anxiety.

with and exchanged currency with a confidential informant who was working with law enforcement who, on several occasions, brought up and discussed with Mr. Mejia that the informant was involved in drug trafficking. Mr. Mejia told the informant that he himself had customers who operated a smoke shop which sold marijuana. As Mr. Mejia states in his letter to the Court (Exhibit C), he deeply regrets his actions.

A number of people have written to the Court on Mr. Mejia's behalf. They address his many positive characteristics.

Tony Sevilla is Mr. Mejia's cousin. He is a real estate broker. Mr. Mejia is like an older brother to him who helped keep him on a straight and narrow path when he was growing up. Mr. Mejia has a close family and Mr. Mejia is the one who organizes family gatherings. He is a most nurturing person and cares about people. He asks the Court to exercise mercy in sentencing his cousin Hugo. (Exhibit D)

Stevie Concha is Mr. Mejia's fiancé. She states that Mr. Mejia is a wonderful person who treats her with love and respect. He is always supportive of her. She states that she previously had been in an abusive relationship in which she had been forced into sex trafficking. Mr. Mejia did everything he could to get her out of the relationship and thus saved her life. She knows that Mr. Mejia will be punished but asks that he be allowed to serve his sentence  helping  people in the community rather than sending him to jail. She asks the Court to bestow mercy when it sentences Hugo. (Exhibit E).

Karen Concha is a friend of Mr. Mejia's and the mother of Stevie Concha. Mr. Mejia is hard-working and reliable. He is family oriented. She calls him a "great person." He saved her daughter from human trafficking and as a result Stevie has turned around her life. She asks the Court in sentencing Mr. Mejia to consider that he is a good man with much to offer. (Exhibit F).

///

///

Jerry Simon is a retired Lt. Colonel who served 28 years in the Air Force and has been a friend of Mr. Mejia for 20 years. He says that Mr. Mejia is always willing to help anyone in need. He has a solid work ethic. He knows that Mr. Mejia's mistakes have brought him before the Court but he wants the Court to know that there is much more to Mr. Mejia. He has talents and abilities to offer society. He also has significant medical conditions. Lt. Col. Simon requests that the Court show leniency and not require Mr. Mejia to be imprisoned. (Exhibit G).

Mayra Triana is a friend of Mr. Mejia who works in administration at a telecommunications company. She writes that Mr. Mejia is a man of compassion and understanding. He loves his family and is its "glue." He is caring and considerate and will do anything for a friend in need, including coming to her rescue when her car broke down at night and she felt unsafe. She knows that Mr. Mejia made mistakes, for which he feels terrible and she asks the Court to find it appropriate to grant leniency to Mr. Mejia. (Exhibit H).

Harmony Chaney met Mr. Mejia through her aunt, to whom he had been a loyal and generous friend for many years. He is a good neighbor, person and friend, who has a good heart and a generous spirit. In sentencing Mr. Mejia, she hopes that the Court will be lenient and take into consideration all the good he has done for others over the years. (Exhibit I).

 Omar Abuelkhair works with Mr. Mejia. At times, because of his eye condition, Mr. Mejia struggles to read computer screens and Mr. Abuelkhair helps him to read the screens. He asks for mercy for Mr. Mejia. (Exhibit J).

Carlos Morales, LCSW is Mr. Mejia's therapist.[8] He writes to describe Mr. Mejia's personal characteristics. In their sessions, Mr. Mejia demonstrates empathy and honesty. He is always considerate of Mr. Morales's scheduling needs. Mr. Mejia's current legal situation has served as a wake-up call for him and has caused him to look deeply into his thought processes which led to his crime. Mr. Mejia has

---

[8] See footnote 7, *supra.*

expressed genuine remorse and is extremely regretful for his actions. Mr. Mejia has empathy for others. He is kind and compassionate. He is most concerned about the how his mother will get by if he is absent. Mr. Morales considers Mr. Mejia deserving of a second chance. (Exhibit K).

Marlene Santellanes is Mr. Mejia's younger sister. She is the mother of three and a bank manager. Her brother Hugo has been a teacher to her children showing them how to feel comfortable with computers. They look up to him as a mentor. He is their mother's caretaker and she depends on him. He has always been there for his mother, particularly since their father died ten years ago. Their family is a close one. Ms. Santellanes hopes that the Court will consider her brother's positive characteristics and the changes he has made to his life in the past year. On behalf of the family, she asks the Court to show leniency to her brother Hugo. (Exhibit L).

# VI.

## The Fair, Just and Appropriate Sentence for Mr. Mejia

Defense counsel knows that this Court needs no further recitation of the requirements of 18 U.S.C. §§ 3553(a), nor a drawn out discussion of *United States v. Booker,* 543 U.S. 220 (2005) and its progeny, and that this Court will base its sentence on the mandate of § 3553(a) that it be "sufficient, but not greater than necessary," to comply with the purposes of federal sentencing.

A.    Mr. Mejia is Eligible for a Sentence of Probation

Before addressing the appropriate sentence which, it is respectfully submitted, the Court should impose, it is necessary to object to the PSR's incorrect legal conclusion that Mr. Mejia is ineligible for a sentence of probation. PSR, ¶ 104.

The PSR (¶ 102) correctly states that, by statute, Mr. Mejia is eligible for a probationary sentence of one to five years. This is so because the offenses are Class D and Class C felonies, respectively. 18 U.S.C. § 3561(a), see also 18 U.S.C. § 3559(a)(3).

However, the PSR (¶ 104) concludes that because the Guideline range is in Zone D of the Sentencing Table, he is ineligible for probation, citing U.S.S.G § 5B1.1, comment (n.2) (i.e., Commentary, Application Note 2). The defense objects to this conclusion and submits that it is legally incorrect. In fact, Mr. Mejia is eligible for a sentence of probation, as will now be seen.

By statute, a defendant who has been found guilty of an offense "may be sentenced to a term of probation" with three exceptions which do not apply here. 18 U.S.C. § 3561(a).

In determining whether to impose a term of probation, its length and conditions, the Court "is to consider the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3562(a).

The Sentencing Guidelines themselves do not preclude a sentence of probation, but if they were to be interpreted  to do so they are overridden by the statute, 18 U.S.C § 3561(c)(1). This is so for the following reasons.

U.S.S.G. § 5B1.1(a) "authorizes" probation in cases where the advisory Guidelines range is in  Zone A and B and 5B1.1(b) bars it in the three situations set forth in § 3561(b), none of which apply in this case.

U.S.S.G § 5B1.1, Commentary, Application Note 2, relied on by the PSR (¶ 104, *supra*), states only that where the advisory Guidelines range is in Zone C or D, the Guidelines "do not authorize" a sentence of probation. It does not say that probation is prohibited in such cases. By its wording and silence, it does not expressly preclude a sentence of probation where the advisory Guidelines range is in Zone C or D.

In addition, where doubts exist about the correct interpretation of a Guideline,

1   such doubt should be "resolved according to the rule of lenity" which "'requires that
2   (the District Court) infer the rationale most favorable to (the defendant) and construe
3   the guidelines accordingly.'" *United States v. Fuentes-Barahona*, 111 F.3d 651, 653
4   (9th Cir. 1997).

5       There are several reasons why U.S.S.G § 5B1.1 and particularly Application
6   Note 2 should have no bearing on the present case. None of them bar a sentence of
7   probation here.

8       First, as stated, § 5B1.1 does not by its terms apply to Class C or Class D
9   felonies. It makes no mention of them.

10       Second, assuming that § 5B1.1 does so apply, the fact that it *"does not*
11   *authorize"* a sentence of probation does not mean that the Guideline *prohibits*
12   probation, as the PSR asserts. Again, the rule of lenity requires that this question
13   must resolved in favor of the defense.

14       Third, the Guideline and the Application Note are in conflict with 18 U.S.C.
15   § 3561(c)(1), *supra*. A Guideline as well as an Application Note are not binding on
16   the District Court where either is in conflict with a statute. *Stinson v. United States*,
17   508 U.S. 36, 38-45 (1993);  *United States v. Godsey,* 690 F.3d 906, 910 (8th Cir.
18   2012).

19       In any event, since *United States v. Booker*, 543 U.S. 220, 245 (2005), the
20   Guidelines are no longer mandatory, but are advisory only. Thus, a District Court is
21   required to "consider Guidelines ranges," "but it permits the court to tailor the
22   sentence in light of other statutory concerns as well, see § 3553(a)."

23       In *Rita v. United States*, 551 U.S. 338, 347-348 (2007), the Supreme Court
24   outlined what the District Court must do in determining the appropriate sentence.

25       First, the Court must calculate the appropriate Guidelines range. The Court
26   must  "then consider all of the § 3553(a) factors to determine whether they support
27   the sentence requested by either party. In so doing, he may not presume that the

28

Guidelines range is reasonable. . . He must make an individualized assessment based on the facts presented." *Ibid.*

And, as stated, in determining whether to impose a term of probation, its length and conditions, 18 U.S.C. § 3562(a) requires that the Court "is to consider the factors set forth in section 3553(a) to the extent they are applicable."

The Supreme Court applied these principles in *Gall v. United States*, 552 U.S. 38 (2007), upholding a District Court's grant of probation.[9]

Gall, a 21 year old second year college student, was a user of cocaine and other drugs. Over a seven month period during 2000 he delivered ecstasy pills to co-conspirators, who then sold them to consumers. Gall netted over $30,000. Gall later withdrew from the conspiracy and, in the words of the District Court, "self-rehabilitated." He graduated from college, then stopped using drugs and obtained work as a master carpenter. In 2004 he was indicted and subsequently pleaded guilty to being responsible for the distribution of at least 2500 grams of ecstasy, the equivalent of at least 87.5 kilograms of marijuana, 552 U.S. at 41-42, 57.

The Presentence Report found that Gall had no significant criminal history and had been a substantial user of drugs before his offense but not in recent years. The PSR recommended a sentence of 30-37 months. The government recommended a sentence within the Guidelines range. *Id.* at 43.

The District Court considered letters from family, friends, neighbors and representatives of firms doing business with him, which uniformly praised Gall's character and work ethic. The Court considered also his post-arrest conduct, including his obtaining a degree and his employment, lack of criminal history, the fact that he had withdrawn from the conspiracy, the  support of family and friends,

_____

[9] The government did not argue below or in the Supreme Court "that a sentence of probation could never be imposed for a crime identical to Gall's," nor did the Supreme Court address such an argument. *Gall v. United States,* 552 U.S. 38, 59 (2007). The issue was whether the 18 U.S.C. § 3553(a) factors found by the District Court justified a sentence of probation. *Id.*

his addiction to alcohol and drugs and his age at the time of the offence. *Id.* at 43-45, 57. The District Court imposed as its sentence a term of probation of 36 months. *Id.* at 43.

In affirming, the Supreme Court observed that while "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," those on probation "are nevertheless subject to several standard conditions that *substantially restrict their liberty.*" *Id.* at 47 (emphasis added).  For example, probationers may not leave the judicial district, move or change jobs without  notifying and sometimes having to receive permission from their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with persons convicted of a felony and are subjected to special conditions, such as submitting to random drug tests as directed.  *Ibid.*[10]

Other courts have similarly upheld grants of probation. In *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008), the Fifth Circuit, expressly following *United States v. Gall, supra,* held that the District Court had properly applied the § 3553(a) factors and it upheld its sentence of 60 months probation for a defendant who had been convicted of possession of child pornography. The Guidelines range was 46-57 months imprisonment.

In *United States v. Duhon*, 541 F.3d 391, 397-398 (5th Cir. 2008), another child pornography case, the Fifth Circuit upheld as not unreasonable a sentence of 60 months probation, based on the District Court's evaluation of the § 3553(a) factors, including that the defendant did not have a criminal history, did not pose a threat to the public, would lose his disability benefits if incarcerated and would benefit from continuing his medical treatment with his psychologist. The defendant's  Guidelines

---

[10] In addition, upon a revocation of probation, the Court can resentence the defendant as if he had committed the crime anew. 18 U.S.C. § 3565(a); *United States v. Sanchez,* 907 F.2d 127, 128 (10th Cir. 1990); *United States v. Kippers,* 685 F.3d 491, 499 (5th Cir. 2012) ("leniency at the original sentencing may justify a harsher revocation sentence"); *United States v. Walker,* 918 F.3d 1134, 1144 (10th Cir. 2019).

range was 27-33 months imprisonment and he was in Zone D of the Guidelines Sentencing Table. 541 F.3d at 394, 397-398 [11]

In *United States v. Pyles*, 272 Fed.Appx. 258 (4th Cir. 2008), the Fourth Circuit, following *Gall,* upheld a sentence of five years probation with six months home confinement for the defendant who was convicted of distribution of crack cocaine. The Guidelines range was 63-78 months. The criminal history category was II. The District Court  concluded that offense was serious in that Pyles had been part of a case which involved a significant amount of a dangerous drug, multiple drug sales and numerous people. *Id.* at 260. However, in applying the § 3553(a) factors, the District Court found that probation was suitable in that Pyles  "had continued on a path of rehabilitation by proving himself to be a good employee, repaying past debts,  rectifying a DUI offense and abstaining from drugs." *Id.* at 259.

In *United States v. Brewer,* 978 F.Supp.2d 710 (W.D.Tex. 2013), the husband and wife defendants were convicted at trial of seventeen counts of conspiracy to defraud, wire fraud and major fraud against the United States by having created a sham contracting operation which led to $6,445,370 in ill-gotten gains. The Guidelines called for sentences of 108-135 months imprisonment for the husband and 70-87 months for the wife. In imposing probationary sentences, the Chief Judge relied on § 3553(a) and *United States v. Duhon, supra.* He took into account the ill-health of the husband, that the wife takes care of him, that the couple had lost or had forfeited most of their assets, each was 64 years old and that they had been shamed in their lifelong hometown and ostracized by their friends. Although Probation contended that, because  of  U.S.S.G. § 5B1.1,  comment n.2, the defendants were not eligible for probation, the District Court stated that its "variance in contravention of Sentencing Guideline § 5B1.1, comment n.2 is reasonable in this case and not without precedent," citing *Duhon, supra, Id.* at 716.

---

[11] According to *Duhon,* the defendant in *Rowan* had possessed "over 400 images of hardcore child pornography." *United States v. Duhon, supra* at 398.

16

In summary, this Court has full authority to impose a sentence of probation as to Mr. Mejia. As discussed, the applicable statutes authorize it. 18 U.S.C. §§ 3561(a), 3562(a). Sentencing Guideline 5B1.1 by its terms does not preclude it. And a Guideline as well as an Application Note are not binding on the District Court where either is in conflict with a statute, *Stinson v. United States*, 508 U.S. 36, 38-45(1993), as is §5B1.1's Application Note 2.[12] Even if § 5B1.1 and its Application Note 2 were read to deny probation to one whose offenses were in Zone D, since *United States v. Booker*, 543 U.S. 220, 245 (2005) and *Kimbrough v. United States,* 552 U.S. 85, 91 (2007), the Guidelines are advisory only and the ultimate deciding factor is the mandate of 18 U.S.C. § 3553(a), that the Court "shall impose a sentence sufficient, but not greater than necessary, to comply" with the objectives of sentencing which, *inter alia,* include: to reflect the seriousness of the offense, to promote respect for the law, to provide "just punishment," to afford adequate deterrence, and to protect the public.[13]

In this case, a sentence of probation is that which most comports with this mandate, as will now be discussed.

---

[12] In *United States v. Belgard,* 894 F.2d 1092 (9th Cir. 1990), the Ninth Circuit held that a Guidelines restriction of probation does not violate due process. *Belgard* has no bearing on the present case. First, it does not involve any of the issues raised here. Second, it precedes *Stinson v. United States,* discussed *supra.* Third, it precedes *United States v. Booker, supra,* and its progeny.

[13] If for any reason the Court should conclude that a sentence of probation is legally barred, it can achieve the same result by imposing a sentence of imprisonment of one day with credit for one day time served followed by a period of supervised release with appropriate conditions. 18 U.S.C. §§ 3581, 3582(a) (in deciding whether to impose a term of imprisonment and, if such a term is imposed, "shall consider the factors set forth in section 3553(a) to the extent they are applicable. . ."). To the extent U.S.S.G. 5B1.1 conflicts with these statutes, the Guideline must give way to the statute. *Stinson v. United States*, *supra,* 508 U.S. 36, 38-45 (1993). And, as the Guidelines are, since *United States v. Booker, supra,* advisory only, the Court is in no way bound by § 5B1.1 and can fashion the appropriate sentence applying the mandate of § 3553(a).

B.   A Sentence of Probation Would be Fair, Just and Sufficient, But Not Greater than Necessary, to Comply with the Purposes of Federal Sentencing

Before his involvement in this case, Mr. Mejia had been a law-abiding citizen with only a minor misdemeanor conviction for driving on a suspended license. He grew up in a poor family, was raised in a gang infested neighborhood, and was bullied and sexually abused as a child.

Mr. Mejia's physical and emotional health are poor. He suffers from Type 2 diabetes and has had two surgeries to remove gallstones. He has retinopathy, a very serious condition, which requires monthly injections in his eyes to preserve his vision, and is an ailment which can cause blindness in those with diabetes.[14] He has and continues to suffer from depression, anxiety and stress, and receives treatment for these conditions. He has chosen therapy in view of his previous use of unprescribed  Xanax for relief.

Mr. Mejia has created his own business, which he operates (albeit as a financial loss, thus far) and provides employment to others. He is the caretaker for his elderly mother.

Those who have written to the Court on behalf of Mr. Mejia describe his many positive personal characteristics and their hopes that the Court will extend leniency to him. (Exhibits A-L).

Mr. Mejia is remorseful for his conduct in breaking the law. As the PSR states at  ¶ 23, he is ashamed and guilt ridden. He accepts full responsibility and does not blame anyone else for his conduct. In short, Mr. Mejia accepts responsibility and does not attempt to minimize or shift blame for his actions.

---

[14] These conditions make Mr. Mejia particularly susceptible to contract and have serious complications from Covid-19 if he were to be incarcerated, even though fully vaccinated. See, https.//www.diabetes.org, "How Covid-19 Impacts People with Diabetes." As of October 20, 2021, 42,998 inmates and 8,016 staff have tested positive for Covid-19 and since recovered. 265 inmates and 7 staff members have died from the disease. Bop.gov/coronavirus [10/20/21].

Mr. Mejia entered a very early plea of guilty, waiving indictment. As he posed no danger to anyone, he has been on bond since the outset. As part of the plea agreement, ¶ 4, Mr. Mejia has agreed to forfeit all the assets he gained as part of his cryptocurrency operation.

As previously noted, Probation recommends a sentence of 46 or 50 months imprisonment and the government recommends a sentence of 46 months. Even if the Court were to reject the defense's sentencing recommendations, the sentences proposed by Probation and the government are excessive when compared to other similar cases in this District and others.

In *United States v. Mohammad,* CR 20-088-JLS, the defendant operated an illegal virtual-currency exchange for 5 years, generating over $15,000,000 worth of transactions. Even after being warned by the government that he needed to register his business he did not do so. Some of his activities he believed were to facilitate illegal prostitution. The Guideline range was 57-71 months. Probation and the government asked for a sentence of 46 months but the Court sentenced him to 24 months. (Docs. 40, 52).

In *United States v. Kalra,* CR 19-484-PSG, the defendant operated for two and a half years an unregistered crypto-currency exchange. During meetings with undercover agents, the defendant agreed to exchanges which he believed were proceeds from methamphetamine, cocaine and other international drug operations, totaling in the hundreds of thousands of dollars. On one occasion, the defendant sold nearly two pounds of methamphetamine to an undercover agent. (Doc. 6). In a related second case, *United States v. Kalra,* CR 19-508-PSG, transferred from the Western District of Texas, the defendant was involved in a illegal drug operation with others and sold, among other illegal substances,  pills laced with methamphetamine and fentanyl and assisted coconspirators in laundering at least $548,132 in drug proceeds through Bitcoin exchanges. (Doc. 6, Exhibit B).The Court

sentenced the defendant to 18 months imprisonment concurrent with the case from Texas. (Doc. 41).[15]

In *United States v. Tetley,* CR 17-738-R, the defendant operated an unlicensed money exchange business for three years. During this time she exchanged between $6,000,000 and $9,500,000. During transactions with undercover agents, she believed that she was conducting exchanges involving the proceeds of narcotics sales. The government recommended 30 months imprisonment. (Doc. 31). The Court sentenced her to 12 months and one day.

In *United States v. Neman,* CR 14-521-JAK, the defendant, who had a lengthy criminal history, operated a sophisticated money laundering and tax fraud scheme to hide millions of dollars in illegally obtained funds funneled into his business. When he was apprehended, he attempted to obstruct justice and, after the unsealing of the indictment, falsified more tax returns. The government recommended a sentence of 57 months imprisonment. (Doc. 701). The Court sentenced him to 24 months imprisonment. Neman's conduct is much more egregious than that of Mr. Mejia's.

Cases in other Districts are also instructive.

In *United States v. Farkas,* CR 18-340-LGS (S.D.N.Y.), the defendant conned investors into investing over $25,000,000 into a large fraud scheme that purported to offer cryptocurrency related financial products. Defendant Robert Farkas was sentenced to a year and a day in prison.

In *United States v. Crotteau,* CR 19-456 (D. Or.), the defendant sold cryptocurrency as part of an international drug scheme in which he was shipping large amounts of MDMA and ketamine using the "dark net." The government recommended the low end of the 57-71 months advisory Guidelines range. On March 29, 2021, the defendant was sentenced to a year and a day in prison.

---

[15] As the sentencing positions are under seal, it is unknown whether the defendant cooperated.

In *United States v. Testa,* CR 19-199-RM (D. Colo.)  and *United States v. Ong,* CR 17-191-RSL (W.D. Wash.), the defendants met with undercover agents on a number of  occasions and agreed  to exchange large amounts of cryptocurrency  to facilitate national and/or international  narcotics trafficking. For their convictions for money laundering and related offenses, Testa was sentenced to a year and a day in prison and Ong was sentenced to 20 days in prison and required to forfeit substantial assets.

In each of these cases, the defendants received sentences far less than that sought by the government in Mr. Mejia's case.  (See, 18 U.S.C. § 3553(a)(6), which requires the sentencing Court to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.")

## VII.
## Conclusion

Applying the § 3553(a) sentencing factors to this case, it is respectfully submitted that probation is the proper sentence for Hugo Mejia.

As observed by the Supreme Court in *Gall v. United States, supra,* 552 U.S. at 47,  and discussed more fully previously in Section VI, *supra,* a sentence of probation *"substantially restricts"* the liberty of the probationer, who is subject to a number of conditions with which he must comply. Such a sentence in this case would be a substantial punishment.

In contrast, a sentence of imprisonment in this case is unnecessary. A sentence of probation would adequately serve the purposes of federal sentencing as set forth in 18 U.S.C. § 3553(a)(1-4, 6-7). It would take into account the seriousness of the offense and provide just punishment. It would provide adequate deterrence. The public does not need to be protected from Mr. Mejia. He does not require correctional treatment.

A sentence of probation would allow Mr. Mejia to continue his medical treatments for his eyes which are necessary to preserve his vision and which prevent him from going blind. It would allow him to continue his therapy for his emotional conditions. It would not subject him to the substantial risk of contracting Covid-19, which is rampant in the federal prison system, as discussed in footnote 11, *supra.* It would allow him to continue to care for his elderly mother. It would allow him to continue to work and to provide employment to others. It would result in a substantial savings to American taxpayers.[16]

For these reasons, it is respectfully submitted that the Court sentence Mr. Mejia to a term of probation with conditions deemed appropriate by the Court.[17]

Dated: November 1, 2021                    Respectfully submitted,

                                           /s/ Michael M. Crain
                                           MICHAEL M. CRAIN, Attorney
                                           for Defendant Hugo Sergio Mejia

---

[16] The rate is ever increasing. In 2018, the average annual cost of incarceration of an inmate in the Bureau of Prisons was $36,299.25. https://www.federalregister.gov/documents/2018/04/30/2018-09062/annual-determination-of-average-cost-of-incarceration. Today, it is $44,258. PSR, ¶ 108, which does not include the additional medical costs which would result for treating Mr. Mejia's physical conditions, particularly retinopathy. On the other hand, supervision by a probation officer would cost $4454.00 annually. PSR, ¶ 108.

[17] If the Court is not inclined to impose that sentence, the defense requests that he be sentenced to a short term of imprisonment followed by a period of supervised release during which, for a reasonable time, Mr. Mejia be on house arrest. If the Court is not so inclined, it is respectfully submitted that he receive a sentence of a term of imprisonment not greater than 12 months and a day.

In addition, should the Court sentence Mr. Mejia to a term of imprisonment, the defense requests that the Court recommend to the Bureau of Prisons that it designate as a place of imprisonment a facility as close as possible to the Los Angeles area so that Mr. Mejia will be near his family. *Cf.* 18 U.S.C. § 3621(b)(4)(B).

The defense also requests that, should the Court impose a term of imprisonment, that it recommend to the Bureau of Prisons that Mr. Mejia be allowed to participate in a substance abuse treatment program, *cf.* 18 U.S.C. § 3621(e).