he was informed that he is still pending to see an opthalmologist. On July 28, 2022 he again inquired and was informed that his request to see an opthalmologist was approved but that they would try to see him "some time this year". As of August 24, 2022 no progress has been made in providing medical care while his condition and vision continue to worsen.

## ARGUMENTS

1. This Court has authority to determine a reduction in sentence.

The First Step Act of 2018 modified 18 Title U.S.C. §3583(c)(1)(A)(i) to allow incarcerated individuals leave to petition a sentencing Court directly for relief 30 days after submitting an initial Request for Administrative Remedy (a.k.a. a BP-8) with the Warden of his institution. Petitioner submitted a BP-8 to FCI Sheridan Administration on July 26, 2022 and has not yet received any response at all.

The COVID pandemic has created staffing shortages BOP wide which create extraordinary and unforeseen circumstances at the time of sentencing. Despite multiple efforts to hire new staff, this does not appear to be changing anytime soon. As such, the BOP is unable to provide the medical care it is mandated to offer to inmates within its custodial care. Given the severe nature of Petitioner's condition he seeks the only recourse available for care, namely compassionate release via this Court.

2. Petitioner's deteriorating condition creates a need for immediate release.

Retinopathy is a progressive metabolic disorder of the eye sometimes resulting from persistent hypertension or diabetes mellitus. It may include fluid leakage, tiny aneurysms of the capillaries, and hemorrhage into the retina. Proliferative retinopathy can also cause fibrous tissue to grow forward onto the gel of the retina and is a major cause of permanent loss of vision.

(See Encyclopedia of Medicine, The American Medical Association, 1989, pg 867) Investigation techniques include vision tests by means of an opthalmoscope and camera, fluorescein injection, electrophysiologic testing, and ultrasound scanning. (ibid.) This level of care is not generally available in BOP institutions and must be referred to outside specialist care. Although Petitioner has continually pursued treatment for his condition, staffing shortages have exacerbated the usual delays in treatment most inmates experience. As such he has gone for months without any care while his conditions have worsened. In addition FCI Sheridan has had several recent outbreaks of COVID-19 infection, further limiting the medical care available for routine or emergent conditions. The pandemic itself creates another unforeseen risk, as Petitioner's immune system is stressed by his conditions and puts him at greater risk for serious illness from coronavirus infection.

Although Petitioner had already been diagnosed with diabetes mellitus at sentencing, his retinopathy was unforeseen. As defined by U.S.S.G. § 1B1.13 Application Note 1, a circumstance in which a defendant is suffering from a condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" can be grounds for release. Nor is 1B1.13 the sole determining factor, as Brooker, 976 F.3d at 237 shows that "district courts have full discretion...to determine whether an 'extraordinary and compelling' reason justifies a compassionate release when an imprisoned person files a §3582(c)(1)(A) motion."

3. Petitioner's continued incarceration exceeds that defined as "sufficient but no longer than necessary" to meet applicable 3553(a) factors.

Petitioner complied with all pretrial requirements without incident, demonstrating his willingness to accept responsibility for his crime and punishment.